UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | )
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Magistrate Case No. 18-00111 (RMM) |
| | ) |
| TIGHE BARRY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Tighe Barry's ("Mr. Barry" or "Defendant") Motion to Dismiss ("Motion") [ECF No. 10]. Mr. Barry seeks to dismiss this matter on two different grounds — for improper venue or for selective prosecution. *See* Def.'s Mot. to Dismiss at 4–8 ("Def.'s Mot."), ECF No. 10. In the alternative, Mr. Barry requests that if the Court does not dismiss this action, then the Court should order the United States to "provide discovery concerning the decision to prosecute" Mr. Barry. *Id.* at 5. Having considered the parties' briefings and submissions thereto, the Court **DENIES** Mr. Barry's Motion.

## BACKGROUND

On September 6, 2018, Mr. Barry attended the Senate confirmation hearings for then-nominee Justice Brett Kavanaugh in the Hart Senate Office Building. Gov't's Opp'n to Def.'s Mot. ("Gov't Opp'n") at 1, ECF No. 12. Several U.S. Capitol Police Officers ("officers") were positioned around the perimeter of the hearing room. *Id.* The officers observed Mr. Barry allegedly placing a pink tiara hat on his head with the writing "KAVA-NOPE CODE PINK" and allegedly advised him that demonstrating was prohibited and to remove the hat. *Id.* Mr. Barry then pulled out a large sign and stood on top of his chair and allegedly began shouting in the direction of the hearing committee members. *Id.* at 1–2.

When approached by the officers, Mr. Barry allegedly leapt from his row of chairs to the row in front of him, causing a chair to dislodge towards other attendees behind him and allegedly injuring another hearing attendee. *Id.* at 2. The officers then removed Mr. Barry from the hearing room, while he allegedly continued to shout, carrying him out by his arms and legs. *Id.* Mr. Barry was then arrested and charged in D.C. Superior Court with three D.C. Code offenses: Unlawful Conduct Capitol Grounds, Resisting Arrest, and Disorderly Conduct. *See* Def.'s Mot. at 1 & Ex. 1 (D.C. Superior Court Docket No. 2018 CMD 013221).

On September 7, 2018, Mr. Barry made an initial appearance in D.C. Superior Court, was released, and scheduled for a status hearing on September 25, 2018. *Id.* at 1. On September 13, 2018, the United States transferred Mr. Barry's D.C. Superior Court matter to this Court and filed an Information charging Mr. Barry with one count of Unlawful Disorderly and Disruptive Conduct and Picketing, Parading, and Demonstrating on United States Capitol Grounds, in violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). *Id.*; *see also* Information, ECF No. 1. On September 24, 2018, Mr. Barry made his initial appearance in this federal district court. *See* Def.'s Mot. at 1. On September 25, 2018, the United States entered a *nolle prosequi* in Mr. Barry's D.C. Superior Court matter, and that case was dismissed. *See id.* at 2.

## ANALYSIS

### I. VENUE

Mr. Barry seeks to dismiss this matter for lack of venue under Federal Rules of Criminal Procedure 12(b)(2) and 18. *Id.* at 4. Federal Rule of Criminal Procedure 18 states that

> [u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

FED. R. CRIM. P. 18. Mr. Barry asserts that 40 U.S.C. § 5109(c)(2) controls venue here, and the United States does not challenge this assertion. *See* Def.'s Mot. at 4–5. Although both parties center their arguments around the interpretation of 40 U.S.C. § 5109(c)(2), that provision does not govern venue in this case.

The venue provision under 40 U.S.C. § 5109 provides that

> [a]n action under this section for a violation of—
>
> (A) section 5104(e)(1) of this title or for conduct that constitutes a felony under federal law or the laws of the District of Columbia shall be brought in the United States District Court for the District of Columbia; and
>
> (B) any other section referred to in subsection (a) may be brought in the Superior Court of the District of Columbia.

40 U.S.C. § 5109(c)(2). Subsection (A), which requires that a matter be brought in federal district court, addresses charges based on violations of Section 5104(e)(1) or conduct constituting a felony. *See id.* Mr. Barry has been charged under 40 U.S.C. § 5104(e)(2), a Class B misdemeanor, so this subsection does not apply.

Subsection (B) refers to Section 5109(a), which refers to violations or attempted violations of Section 5104(e)(1).[1] Again, Mr. Barry has been charged under 40 U.S.C. § 5104(e)(2).[2] Mr. Barry suggests that the same venue provisions apply to charges arising under any subsection of Section 5104. *See* Def.'s Mot. at 4–5. However, the plain text of subsection

---

[1] 40 U.S.C. § 5109(a) states: "**(a) Firearms, dangerous weapons, explosives, or incendiary device offenses.**--An individual or group violating section 5104(e)(1) of this title, or attempting to commit a violation, shall be fined under title 18, imprisoned for not more than five years, or both."

[2] Notably, Section 5104(e)(2) is referenced under Section 5109(b), subtitled "Other offenses," which states: "**(b) Other offenses.**--A person violating section 5103 or 5104(b), (c), (d), (e)(2), or (f) of this title, or attempting to commit a violation, shall be fined under title 18, imprisoned for not more than six months, or both." 40 U.S.C. § 5109(b)

3

(B) clearly identifies the types of charges to which it applies and provides no basis to interpret it as extending to charges brought under 40 U.S.C. § 5104(e)(2).  Moreover, neither party has cited precedent applying 40 U.S.C. § 5109 to charges brought under 40 U.S.C. § 5104(e)(2). Therefore, the venue provision codified at 40 U.S.C. § 5109 is inapplicable to this case.

In the absence of an alternate controlling statute, Federal Rule of Criminal Procedure 18 governs venue.  Rule 18 requires the government to "prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18.  Here, Mr. Barry is alleged to have committed an offense on the U.S. Capitol Grounds in the District of Columbia.  *See* Information, ECF No. 1. Neither party disputes that Mr. Barry was in a hearing room on the U.S. Capitol Grounds, where a confirmation hearing was being held for Justice Brett Kavanaugh.  *See* Def.'s Mot. at 2; Gov't Opp'n at 1.  As the alleged offense occurred in the District of Columbia, venue is proper in this District.  *Cf. United States v. Class*, 38 F. Supp. 3d 19, 28 (D.D.C. 2014) ("Defendant is charged with committing a criminal offense on United States Capitol Grounds in the District of Columbia, and he has not pointed to any statute or rule permitting (much less requiring) him to be prosecuted in a different district. Therefore, venue is proper in this District.").  The Court therefore DENIES Mr. Barry's motion to dismiss for lack of venue.

## II. SELECTIVE PROSECUTION

Mr. Barry also contends that he is being selectively prosecuted in federal district court, as opposed to D.C. Superior Court, and seeks to dismiss this case on that basis.  Def.'s Mot. at 3, 5–8.  In the alternative, if the Court does not dismiss the case, Mr. Barry seeks authorization to take discovery on the issue of selective prosecution.  *See id.* at 8.  The United States contends that there is no evidence in the record to support the assertion of selective prosecution.  *See* Gov't Opp'n at 14.

### A. Standard for Determining Selective Prosecution

Prosecutorial decisions enjoy a "presumption of regularity" and "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Nevertheless, prosecutorial discretion is "subject to constitutional constraints," *Armstrong*, 517 U.S. at 464 (quotation marks omitted) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). "The Equal Protection Clause prohibits selective enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Batchelder*, 442 U.S. at 125 n.9 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Accordingly, to establish selective prosecution, the Defendant "must show both (1) that he was singled out for prosecution from others similarly situated and (2) that his prosecution was motivated by a discriminatory purpose." *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009); *accord United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982); *see also Armstrong*, 517 U.S. at 465 ("The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985))). As this inquiry asks the court to "invade a special province of the Executive—its prosecutorial discretion . . . the standard for proving [this claim] is particularly demanding." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999); *accord Armstrong*, 517 U.S. at 463. "[I]n order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465 (quotation marks omitted) (quoting *Chemical Found.*, 272 U.S. at 14–15). Thus "[t]o warrant dismissal, a defendant must

present 'clear evidence' that the decision to prosecute her had a discriminatory effect and was motivated by a discriminatory purpose." *United States v. Palfrey*, 499 F. Supp. 2d 34, 39 (D.D.C. 2007) (quoting *Armstrong*, 517 U.S. at 464).

A defendant may obtain discovery in support of a selective prosecution claim by showing "some evidence tending to show the existence of the essential elements" of the claim. *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)) (internal quotation marks omitted); *see also Attorney Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (noting that defendant "must offer at least a colorable claim both that the prosecution was improperly motivated and that it was selective in the first place."); *Khanu*, 664 F. Supp. 2d at 31. This "colorable showing must be made with respect to both prongs of the test." *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 16 (D.D.C. 1997) (citing *Irish People, Inc.*, 684 F.2d at 932).

### B. Whether Mr. Barry Has Provided Evidence of a Discriminatory Effect By Showing that He Was Singled Out From Similarly Situated Individuals.

Mr. Barry argues that he was singled out from other similarly situated individuals for prosecution in federal district court. *See* Def.'s Reply to Gov't Opp'n to Mot. to Dismiss and for Discovery ("Def.'s Reply") at 7, ECF No. 14. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Khanu*, 664 F. Supp. 2d at 32 (internal quotation marks omitted) (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)); *see also United States v. Blackley*, 986 F. Supp. 616, 619 (D.D.C. 1997) (describing similarly situated individuals as those with "some degree of commonality of conduct among the indictable group"). "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial

6

decisions with respect to them." *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997) (internal quotation marks omitted) (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)), *cited in Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000).[3]

Mr. Barry defines the group of "similarly situated" individuals as all other individuals who were arrested and charged during the Kavanaugh hearings. *See* Def.'s Mot. at 7 (noting that 1,188 other individuals arrested during this time for the same conduct were charged in D.C. Superior Court); Def.'s Reply at 3–7 (listing instances of protest during the hearings and arrest numbers). In particular, Mr. Barry identifies three other individuals — Ms. Wood, Ms. Gold, and an unidentified woman — who conducted protests at the Kavanaugh hearings in the same manner that Mr. Barry allegedly did and were charged in D.C. Superior Court. *See* Def.'s Reply at 5–7. Mr. Barry contends that the U.S. Attorney's Office prosecuted him (but not other similarly situated individuals) in federal court instead of D.C. Superior Court as a punishment for his prior exercise of his Sixth Amendment right to a jury trial, and therefore violated the Equal Protection Clause. *See* Def.'s Mot. at 5; Def.'s Reply at 8–9.

To prove discriminatory effect under the theory he has articulated, Mr. Barry "must show that similarly situated individuals" who did not assert their Sixth Amendment right to a jury trial "were not prosecuted" in federal District Court. *Armstrong*, 517 U.S. at 465. In *Armstrong*, the Supreme Court rejected the view that a defendant could "establish a colorable basis for discriminatory effect without evidence that the Government has failed to prosecute others who

---

[3] Prosecutorial factors may include "the strength of the evidence against a particular defendant, the defendant's role in the crime, whether the defendant is being prosecuted by state authorities, the defendant's candor and willingness to plead guilty, the amount of resources required to convict a defendant, the extent of prosecutorial resources, the potential impact of a prosecution on related investigations and prosecutions, and prosecutorial priorities for addressing specific types of illegal conduct." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

7

are similarly situated to the defendant." *Id.* at 469. Mr. Barry has failed to provide any such evidence and offers only his conclusory and unsupported assertion that he was the only individual who asserted his right to a jury trial due to charges related to the January 2017 protests of the Attorney General nomination hearings. Mr. Barry contends that "with discovery, he will be able to identify others who were arrested in January 2017 and did not assert their rights to a jury trial, and then were subsequently arrested during the Kavanaugh hearings for conduct similar to his but were not prosecuted criminally in federal court." Def.'s Reply at 9. However, the Court can neither dismiss a case nor order discovery for selective prosecution based solely on unfounded speculation that Mr. Barry will later procure evidence of a discriminatory effect. *See Armstrong*, 517 U.S. at 470 (noting that "the required threshold — a credible showing of different treatment of similarly situated persons — adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution"). In sum, Mr. Barry has failed to provide any evidence of being singled out from similarly situated individuals and thus has not met the evidentiary threshold for showing a discriminatory effect.

Moreover, even if Mr. Barry had presented some evidence of a discriminatory effect, a viable selective prosecution claim would require that the similarly situated individuals "present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Hastings*, 126 F.3d at 315 (quoting *Olvis*, 97 F.3d at 744) (internal quotation marks omitted). The United States has identified legitimate prosecutorial factors that may justify prosecuting Mr. Barry differently than other allegedly similarly situated individuals. At the Motions Hearing held on March 18, 2019, the United States asserted that Mr. Barry has an extensive history of similar conduct, then identified a history of infractions ranging from 2007 to 2018 for similar conduct. Although Mr. Barry

8

responded by asserting that there are many other individuals in this area who have protested for decades, he did not indicate whether the three individuals he identified as similarly situated also had a criminal history similar to his. Likewise, Mr. Barry asserts that many of those arrested during the Kavanaugh hearings were "repeat offenders," however he provides no further information regarding the nature of those individuals' criminal history. Def.'s Mot. at 2–3.

The United States also argued that Mr. Barry engaged in more extreme conduct in his demonstration than others, including leaping from one row of chairs to another, and that "[n]o other demonstrator conducted himself or herself in this manner." Gov't Opp'n at 12. In response, Mr. Barry argued that the penalty before the District Court, which is less than the possible penalty before the Superior Court, did not support the United States' assertion that Mr. Barry's conduct was more extreme. *See* Def.'s Reply at 3. Mr. Barry's argument is persuasive, and therefore this argument did not weigh as heavily in the Court's consideration of legitimate prosecutorial factors. Overall, however, the Court concludes that Mr. Barry has failed to provide sufficient evidence of a discriminatory effect to warrant discovery or dismissal.

### C. Whether Mr. Barry Has Provided Evidence that His Prosecution Was Motivated by a Discriminatory Purpose

Although Mr. Barry has failed to proffer sufficient evidence supporting the first prong of his selective prosecution claim to obtain discovery or dismissal, the Court nevertheless will briefly address the second prong of the inquiry which requires Mr. Barry to demonstrate that his "prosecution was motivated by a discriminatory purpose." *Khanu*, 664 F. Supp. 2d at 31. To establish a discriminatory purpose, the defendant must show "that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *Mangieri*, 694 F.2d at 1273 (citations omitted) (internal quotation marks omitted). Specifically, a defendant "must

prove that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *accord United States v. Cooper*, 91 F. Supp. 2d 90, 115 (D.D.C. 2000). Given that Mr. Barry contends that the United States has prosecuted him on a federal charge in this case to deprive him of his Sixth Amendment right to a jury trial, he must provide evidence that his exercise of his right to a jury trial is the reason that prosecutors treated him differently than others. *See* Def.'s Mot. at 7–8; Def.'s Reply at 3; *Wayte*, 470 U.S. at 610 (noting that discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (alterations in original) (internal quotation marks omitted)); *see also Khanu*, 664 F. Supp. 2d at 33. As "direct evidence of discrimination is rarely available, a defendant may use statistical disparities and other indirect evidence to show bias or discriminatory motive." *Khanu*, 664 F. Supp. 2d at 33 (citing *Branch*, 970 F. Supp. at 17). Such statistical proof "must present a 'stark' pattern to be accepted as the sole proof of discriminatory intent under the Constitution." *Id.* (quoting *McCleskey*, 481 U.S. at 293) (internal quotation marks omitted).

To support his assertion that the United States is prosecuting him "because of" this prior exercise of his Sixth Amendment right to a jury trial, Mr. Barry argues that his prior case, where he was charged for protesting at the confirmation hearing of then-Attorney General nominee Jeff Sessions, influenced the prosecutorial decisions in this matter. *See* Def.'s Reply at 8. In that prior case, Mr. Barry requested a jury trial in the D.C. Superior Court and was subsequently acquitted of one charge and convicted of another. *See id.* After his conviction, Mr. Barry appealed to the D.C. Court of Appeals. *Id.* Mr. Barry contends that he is the only individual who exercised his right to a jury trial, was subsequently arrested at the Kavanaugh hearings, and

then charged in federal court. *Id.* Mr. Barry then suggests that the proximity of his appeal of the prior Superior Court matter to the United States' decision to file an Information in this Court "raises substantial questions" about the decision to prosecute Mr. Barry in federal court, citing the fact that he was arrested just one day before the United States filed its appellate brief in the prior appeal and that the Information was filed less than a week after the United States filed its appellate brief. Def.'s Mot. at 3–4.

Mr. Barry again fails to present sufficient evidence to demonstrate that discovery is warranted. To obtain discovery, a defendant "must provide something more than mere speculation or personal conclusions based on anecdotal evidence." *United States v. Hsia*, 24 F. Supp. 2d 33, 49 (D.D.C. 1998) (internal quotation marks omitted) (citing *Armstrong*, 517 U.S. at 470), *rev'd in part, appeal dismissed in part on other grounds*, 176 F.3d 517 (D.C. Cir. 1999); *see also Armstrong*, 517 U.S. at 470 (requiring something more than "personal conclusions based on anecdotal evidence" to merit discovery on the basis of "some evidence"). The fact that the Information was filed shortly after the United States submitted an appellate brief does not constitute evidence of a discriminatory purpose. The United States' briefing deadline was set in an Order filed on August 30, 2018 — which clearly predates Mr. Barry's arrest. *See* Def.'s Mot., Ex. 4, ECF No. 10-4 (Mr. Barry's appellate docket in Case No. 17-CM-0907). There is no reason to infer that filing an appellate brief to defend the jury's conviction of a defendant would cause prosecutors to resent and wish to punish a defendant's decision to pursue a jury trial. Therefore, Mr. Barry has proffered no evidence indicating or providing grounds to suspect that a link exists between Mr. Barry's exercise of his right to a jury trial and the instant federal prosecution. *Cf. United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (noting how the "trial court permitted discovery" on a selective prosecution claim, "after the defendant

11

introduced evidence suggesting a link" between government foreign policy and individuals exercising certain religious beliefs).

Although Mr. Barry contends that he was the only person to assert a right to a jury trial in connection with the January 2017 protests, and then the only person to be prosecuted federally after his arrest at the Kavanaugh hearing, that unsupported assertion does not provide a basis to order discovery. *See* Def.'s Reply at 8–9. Mr. Barry hopes to obtain evidence supporting his belief in discovery, but currently has no evidence, statistical or otherwise, to corroborate this purported distinction. Absent evidence supporting that claim and supporting an inference that pursuing a jury trial motivated the United States to discriminate against him, Mr. Barry cannot meet the second prong of the selective prosecution standard.

Having failed to provide sufficient evidence to present a colorable claim of selective prosecution, Mr. Barry is not entitled to discovery in this matter. *See Blackley*, 986 F. Supp. at 620 ("Because defendant has not alleged a sufficient or colorable *prima facie* claim of selective prosecution, he is not entitled an evidentiary hearing or discovery"). Therefore, he also has not met the higher clear evidence standard that would merit dismissing a case for selective prosecution. *See Armstrong*, 517 U.S. at 465.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Barry's Motion to Dismiss [ECF No. 10] is **DENIED**.

Dated: June 5, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE